**In re the Marriage of Ellen Gay NOVAK, n/k/a Ellen Gay Boertje, Petitioner, Appellant,**

v.

**Thomas Robert NOVAK, Respondent.**

**No. C6–89–922.**

Court of Appeals of Minnesota.

Oct. 10, 1989.

Review Denied Dec. 1, 1989.

Dale Blanshan, Brainerd, for appellant.

Gary Remine, Owatonna, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and NORTON and LOMMEN *, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Ellen Boertje contends the trial court erred in prohibiting her from providing education at home for the eight year

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

old son of the parties. Deciding that appellant had to cooperate on the education decision, the trial court granted respondent's motion to require enrollment of the child in the public schools, or alternatively in a private school such as the religious school attended by the child since 1986. We remand for a determination of the child's best interests.

## FACTS

The parties were married in 1979 and separated three years later. Consistent with a dissolution stipulation, the child was placed in appellant's physical custody but in the legal custody of both parents.

During the summer of 1988, appellant reached the conclusion she would educate the child in her home. Respondent moved to reverse this decision, contending it was made without his input and that the interests of the child would best be served by enrollment in the public school system. He expressed beliefs that appellant was not qualified to provide the child with the best education available, that it was important for the child to learn socialization skills outside of a single religious discipline, and that teachers in the public school system were "far and away" more qualified to provide education for the child. Respondent also stated his wishes that the child be permitted the extracurricular activities and other options offered in a public school. Appellant filed a statement indicating her study of the home schooling option and her preparation to lawfully provide for this education. She submitted studies on the achievements of children educated at home; in addition, one document reported that children are socialized better by parental example than through peer contact, and that home schooled children score well on self-concept testing. Neither party proposed terminating the determination of joint legal custody.[1]

In a memorandum, the trial court observed the conflict between joint custody rights and a decision made by appellant

---

1. See Folberg, *Joint Custody Law—The Second Wave*, 23 J.Fam.L. 1, 10 (1984) (disagreement prompting designation of sole legal custodian).

without respondent's consent. The court observed that home schooling would further preclude outside input on the child's education. The court expressed agreement with respondent that the parties "must be compelled to cooperate" in the upbringing of the child. The court further concluded that it was not possible to determine in which school the child would perform best, and that this was "not the issue." The court found flaws in studies comparing academic performances of home schooled children with the more diverse public school population, but concluded in addition that the studies on home schooling were "irrelevant" to the issue in the case.

## ISSUES

1. Did the trial court employ the correct standard in determining the dispute of the parties?

2. Should the physical custodian's major decisions enjoy presumptive weight?

## ANALYSIS

### 1.

■ In determining custody, the court "shall consider the best interests" of the child. Minn.Stat. § 518.17, subd. 3(a)(3) (1988). The law makes no distinction between general determinations of custody and resolution of specific issues of custodial care. *See Auge v. Auge,* 334 N.W.2d 393, 397, 399 (Minn.1983) (permitting proof by a noncustodial parent that removal of the child from the state "is not in the best interests of the child").

Here, the trial court attempted to resolve a custodial issue by identifying the nature or weight of competing joint custodial rights. That standard is not in accord with the mandate for a decision based on the child's best interests. In addition, as appellant contends, a measure of the joint rights of the parties is inevitably futile; although the motion proceedings focus on respondent's disagreement, appellant has stated a truism that "she is half the disagreement in the case." The issue must be resolved according to the best interests of the child. *See In re Marriage of Bolin,* 336 N.W.2d

441, 447 (Iowa 1983) (as between joint custodians, issue of physical care resolved by the court according to the children's best interests).

In the circumstances here, we must remand for the trial court's determination of the child's best interests. Although, as the trial court observed, this is no easy task, justice in the case cannot be achieved through any alternative presumption in favor of either joint custodian.

### 2.

■ Appellant would have us go further to determine that the physical custodian's wish must prevail unless respondent shows "the child's physical or emotional health is likely to be endangered or the child's emotional development impaired." Minn.Stat. § 518.176, subd. 1 (1988) (the right of the "custodian" to determine the child's upbringing). *See* Minn.Stat. § 518.003, subd. 3(e) (1988) (defining "custodian" as the person who has physical custody of the child). *See also Gordon v. Gordon,* 339 N.W.2d 269, 271 (Minn.1983) (extending *Auge* presumption for freedom of removal to case involving joint legal custodians). Under existing law, we conclude that neither party has a preferred right to decide the educational issue.

Minn.Stat. § 518.176, subd. 1, enacted in 1978, establishes the physical custodian's right to "determine the child's upbringing, including education, health care, and religious training." 1978 Minn.Laws, ch. 772, § 43. Three years later, the legislature enacted the definitions of custody now found in Minn.Stat. § 518.003, subd. 3. "Joint legal custody," the legislature declared, involves equal rights of parents, including the right to participate in major decisions "determining the child's upbringing, including education, health care and religious training." 1981 Minn.Laws, ch. 349, § 2. Minn.Stat. § 518.003, subd. 3(b) (1988). It is evident the 1981 enactment deals precisely with those powers addressed in the 1978 law, at least as to "major decisions." *Id.* Educational decisions are specifically mentioned in both provisions. We conclude the specific enactment on joint legal custody supersedes the

earlier provisions on powers of a physical custodian. *See* Minn.Stat. § 645.26, subd. 4 (1988) (the latest of irreconcilable provisions prevails).

## DECISION

The trial court's order on the educational issue is reversed and the proceedings remanded for a determination of the child's best interests.

Reversed and remanded.