**In re the Marriage of: Robert Peter CROWLEY, Respondent,**

v.

**Bridget Marie MEYER, Appellant.**

A15-1471

Supreme Court of Minnesota.

Filed: June 28, 2017

---

Steven M. Dittrich, Dittrich & Lawrence, P.A., Rochester, Minnesota, for respondent.

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; Susan M. Gallagher, Gallagher Law Office, L.L.C., Eagan, Minnesota; and Scott Wilson, Minneapolis, Minnesota, for appellant.

## OPINION

LILLEHAUG, Justice.

After dissolving their marriage, appellant Bridget Meyer and respondent Robert Crowley agreed to share joint legal and physical custody of their children. Their agreement was reflected in a 2012 judgment and decree. In 2013, the district court issued a series of orders granting Crowley "temporary" sole physical custody of the children. More than a year later, Meyer moved to "reinstate" joint custody,

but the district court denied her motion in a March 2015 order.

Meyer appealed the March 2015 order. The court of appeals determined that it had appellate jurisdiction and affirmed the order. *Crowley v. Meyer*, A15-1471, 2016 WL 5888693 (Minn.App. Oct. 11, 2016).

We conclude that the March 2015 order, though appealable, erroneously modified custody without complying with the requirements of Minn. Stat. § 518.18 (2016). Thus, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

## FACTS

Bridget Meyer and Robert Crowley married in 1992 and had two children, now ages 17 and 11. Crowley petitioned to dissolve the marriage in 2009. Before dissolving the marriage, the parties stipulated to the appointment of a parenting time expeditor.[1] In 2011, the district court dissolved the marriage. In 2012, the court issued a Bifurcated Judgment and Decree as to Custody and Parenting Time, adopting the parties' agreement that they would share joint legal custody of the children and joint physical custody by alternating weeks.

The joint physical custody arrangement did not survive for long. On February 27, 2013, Crowley moved for an emergency order granting him immediate temporary sole physical custody of the children. Two weeks later, the district court granted Crowley's motion, finding that the children were "endangered in the care of [Meyer]."

On April 9, 2013, Crowley filed a petition for a harassment restraining order (HRO)

1. "A 'parenting time expeditor' is a neutral person authorized to use a mediation-arbitration process to resolve parenting time disputes." Minn. Stat. § 518.1751, subd. 1b(c) (2016). "Upon request of either party, the parties' stipulation, or upon the court's own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes that occur under a parenting time order while a matter is pending ... or after a decree is entered." *Id.*, subd. 1 (2016).

under Minn. Stat. § 609.748 (2016). The next day, the district court granted Crowley an ex parte HRO prohibiting Meyer from contacting him or the children. After a non-evidentiary hearing the next month, the district court reaffirmed the HRO and instructed the parties to work with a psychologist on parenting and communicating. The court stated that it "intends to keep the HRO in place until such time as the parties are able to coparent in the best interest of the minor children and constructively communicate with each other," and ordered the HRO to remain in effect "until November 1, 2013 unless changed by a later court order."

Crowley moved for another emergency order in late May, this time seeking to suspend all of Meyer's communications with him and the children. In July, the district court held a hearing—again non-evidentiary—and issued an order essentially restating its previous decision granting Crowley temporary sole custody and instructing the parents to attend counseling with a psychologist. The court set a hearing for the next month.

Following the August hearing—again non-evidentiary—the district court ordered that Crowley "shall retain temporary sole" custody and that the parents "shall continue to engage in co-parent counseling." The court noted that the parties were making progress toward their "goal" of "resum[ing] joint physical custody of the minor children." The order said nothing about the duration of the temporary custody arrangement.

After the August order, the parenting time expeditor continued to make parenting time decisions, including modifying the parenting schedule to grant Meyer 3 days of parenting time with the children every 2 weeks. The parenting time expeditor's decision reiterated that "[i]t is anticipated that the parties will return to a joint physical custody schedule" in October 2013.

The April 2013 HRO expired, as scheduled, on November 1, 2013. But Crowley and Meyer did not resume joint physical custody in October, as the parenting time expeditor had predicted. Instead, the parenting time expeditor continued to issue periodic decisions modifying parenting time. In November 2013, Meyer's parenting time was reduced to 2 days every 2 weeks. In May 2014, her parenting time was further reduced to one Sunday afternoon each month. And in December 2014, Meyer's parenting time was returned to 2 days every 2 weeks.

In January 2015, Meyer moved to "reinstate" the custody award from the 2012 judgment and decree. She asked for an evidentiary hearing on her motion, which was supported by affidavits from herself and her therapist. In her affidavit, Meyer represented that she was a fit parent. She stated: "I am not a danger to our children. Moreover, the children continually request that they have the week on and week off parenting time that had previously been ordered." She further stated that she had successfully attended therapy and passed random alcohol tests.

After another hearing—again non-evidentiary—the district court denied Meyer's motion on March 19, 2015. The order concluded that Meyer "has failed to set forth any evidence to set the case for an evidentiary hearing," and that "the children's present environment, with [Crowley], does not endanger their physical or emotional health." Meyer moved for amended findings, but the district court denied her motion.

Meyer appealed the district court's March 2015 order, arguing that it improperly modified the judgment and decree's custody award and denied her request for an evidentiary hearing, among other al-

leged errors. The court of appeals questioned whether it had jurisdiction and directed the parties to submit memoranda addressing whether the March 2015 order was a "final and appealable" order. Meyer argued, in part, that the order was appealable because the district court's temporary orders awarding physical custody to Crowley in 2013 had, "in effect, become a de facto permanent custody order" due to "the passage of such a substantial amount of time."

In an unpublished order, the court of appeals in special term accepted jurisdiction over the case, agreeing with Meyer that the August 2013 order was actually a "de facto award of permanent physical custody" to Crowley because "[t]he award of custody to [Crowley] was of indefinite duration." The court reasoned that, because the August 2013 order was a de facto award of permanent physical custody to Crowley, the March 2015 order denying Meyer's motion to modify it was final and appealable.

In a later unpublished opinion addressing the merits of Meyer's appeal, the court of appeals confirmed that the August 2013 order was a de facto award of permanent physical custody to Crowley. *Crowley*, 2016 WL 5888693, at *2. The court held that, because Meyer's "reinstatement" motion was actually a motion for modification of the August 2013 order, Meyer was required to satisfy the four-part test for custody modification set forth in Minn. Stat. § 518.18. *Crowley*, 2016 WL 5888693, at *3. Noting that Meyer's affidavit to the district court did not address the statutory factors, the court of appeals affirmed the district court and concluded that there was no abuse of discretion in denying an evidentiary hearing. *Id.* at *5. We granted Meyer's petition for review.

## ANALYSIS

### I.

We must first determine whether we have jurisdiction over the appeal from the March 2015 order denying Meyer's motion to "reinstate" the 2012 judgment and decree. The interpretation of procedural rules, including the Rules of Civil Appellate Procedure, presents a question of law that we review de novo. *Madson v. Minn. Mining & Mfg. Co.*, 612 N.W.2d 168, 170 (Minn. 2000). We agree with the court of appeals that there is appellate jurisdiction, but our analysis differs.

Minnesota Rule of Civil Appellate Procedure 103.03(h) provides for appellate jurisdiction from "an order that grants or denies modification of custody, visitation, maintenance, or child support provisions in an existing judgment or decree." By denying Meyer's motion to return to the custody arrangement in the judgment and decree, the March 2015 order modified the custody provisions in the judgment and decree. Thus, the March 2015 order was appealable under Minn. R. Civ. App. P. 103.03(h).

Nevertheless, Crowley argues that we should not consider Meyer's appeal of the March 2015 order for two reasons: (1) Meyer failed to immediately petition for review of the special-term panel's jurisdictional order, and (2) she allegedly presented a new theory of appellate jurisdiction to this court.

Meyer had no obligation to petition for review of the court of appeals' jurisdictional order on which she prevailed. Further, we do not require piecemeal appeals. *See Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179 (Minn. 1988) ("[T]he thrust of the rules governing the appellate process is that appeals should not be brought or considered piecemeal."). When the court of appeals issued its jurisdictional order, it did

not reach the merits of Meyer's appeal; that determination occurred in the court of appeals' later opinion. Only after the court of appeals issued that opinion did the full set of issues appealed by Meyer become fully ripe for review. And that is when Meyer petitioned for review. Meyer did not forfeit her right to seek review of the basis on which the court of appeals concluded that the March 2015 order is appealable.

■ As for Crowley's new-theory argument, it is true that a party may not "obtain review by raising the same general issue litigated below but under a different theory." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *see, e.g., Pomush v. McGroarty*, 285 N.W.2d 91, 93 (Minn. 1979) (stating that plaintiffs may not raise a new negligence theory on appeal); *Sec. Bank of Pine Island v. Holst*, 298 Minn. 563, 215 N.W.2d 61, 62 (1974) (stating that a party may not raise an equitable lien issue for the first time on appeal). But Crowley's assertion that Meyer presented a new theory of jurisdiction to this court is mistaken.

In her jurisdictional memorandum to the court of appeals, Meyer made two distinct assertions: (1) that "[a]fter the passage of such a substantial amount of time, the [2013 temporary custody order] has, in effect, become a de facto permanent custody order"; and (2) that "[t]he continuing nature of the [2013] temporary custody order combined with the court's [March 2015] denial of [Meyer's] motion to modify the temporary order creates a permanent custody arrangement." Meyer relied on the latter position in her briefs to this court. Thus, Meyer's current theory of appellate jurisdiction was presented to the court of appeals, at least in the alternative, and is consistent with our conclusion that jurisdiction exists under Minn. R. Civ. App. P. 103.03(h).

II.

■ Having determined that we have jurisdiction, we next consider whether the district court erred when, by its March 2015 order, it modified the custody arrangement established by the judgment and decree. Determining the proper statutory standard to be applied to custody decisions presents a question of law. *Ayers v. Ayers*, 508 N.W.2d 515, 518 (Minn. 1993). The interpretation of a statute is also a question of law requiring de novo review. *Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n*, 538 N.W.2d 692, 695 (Minn. 1995).

Minnesota Statutes § 518.18 governs the modification of custody orders after a judgment and decree. *State ex rel. Gunderson v. Preuss*, 336 N.W.2d 546, 547 (Minn. 1983). The party seeking a modification of the custody arrangement in the judgment and decree bears the burden of meeting the requirements of section 518.18. *Gordon v. Gordon*, 339 N.W.2d 269, 270-71 (Minn. 1983).

■ Under section 518.18, the district court must first determine whether the party seeking to modify the custody arrangement in the judgment and decree has made a prima facie case for modification. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). To establish a prima facie case, the party seeking custody modification must allege that: (1) the circumstances of the children or custodian have changed; (2) modification would serve the children's best interests; (3) the children's present environment endangers their physical health, emotional health, or emotional development; and (4) the benefits of the change outweigh its detriments with respect to the children. *Id.* If a party establishes a prima facie case, the district court must hold an evidentiary hearing at which evidence may be presented on each

factor. *Id.* "Specific findings on these matters will insure compliance with section 518.18...."[2] *Gunderson*, 336 N.W.2d at 548.

 In modifying custody in this case, the district court erred, as a matter of law, in three respects. First, the district court (and the court of appeals) erred in determining that Meyer, not Crowley, had the burden of persuasion on the motion that led to the March 2015 order. In denying Meyer's motion, the district court stated that Meyer "has failed to set forth any evidence to set the case for an evidentiary hearing." This finding was incorrect because it improperly shifted the burden of persuasion. It is the party *seeking to change* the custody arrangement in the judgment and decree who bears the burden in pursuing modification. *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn. 1981) ("[T]he burden is upon the movant to establish satisfactorily on a preliminary basis that there has occurred a significant change of circumstances from the time when the original or amended custody order was issued."). Crowley, not Meyer, had the burden to show that the custody arrangement in the 2012 judgment and decree should be modified.

 Second, the district court erred by modifying the judgment and decree without holding an evidentiary hearing. "[W]hile the trial court has continuing jurisdiction to modify a custody order if warranted, it may not do so absent an evidentiary hearing in which witnesses may be cross-examined." *Auge v. Auge*, 334 N.W.2d 393, 396 (Minn. 1983). The statement in the March 2015 order that Meyer "has failed to set forth any evidence to set

the case for an evidentiary hearing" turned the statute on its head. *See* Minn. Stat. § 518.18(d) (prohibiting the district court from modifying a custody award in the absence of findings of fact and other factors).

 Third, in modifying the judgment and decree, the district court failed to make each of the factual findings required by section 518.18. For instance, section 518.18(d)(iv) requires a finding that "the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development." The March 2015 order made no such finding.

Remand is therefore necessary to reinstate the original custody order or, upon a motion to modify, for an evidentiary hearing. On remand, in the best interests of the children, the district court shall expedite proceedings to correct its errors. As we said in *Eisel v. Eisel*, 261 Minn. 1, 110 N.W.2d 881, 883 (1961), "[e]xcept in the most extraordinary cases, the practice of requiring repeated hearings and leaving the question of permanent custody undecided for an extended period of time is inadvisable and unnecessary."

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

2. The court of appeals erred in concluding that a series of temporary custody orders can, over time, become a permanent custody modification. There is only one way to modify a permanent custody order: furnish evidence on, and satisfy, the four factors set forth in section 518.18. Crowley neither moved for a permanent modification of the original custody order nor presented evidence sufficient to satisfy section 518.18.