HUDSON, Justice.
The issue before us is whether the best-interests-of-the-child standard in Minn. Stat. § 518.175, subd. 5(b) (2016), or the endangerment standard in Minn. Stat. § 518.18(d)(iv) (2016), applies to the motion of respondent Eric John Christensen to increase his parenting time to every other week. Christensen and appellant Danielle Marie Healey are the parents of a minor child. The parties stipulated to an initial order that granted Healey sole physical custody, subject to Christensen's parenting time. Several years later, the parties agreed to assign the child's primary residence to Healey and to increase Christensen's parenting time. During the school year, Christensen had parenting time every other weekend, and during the summer months, the parties alternated weeks with the child. In 2016, Christensen brought a motion to expand the alternating week schedule to the entire year. The district court determined that Christensen's motion was a motion to modify physical custody, and that the modification would change the child's primary residence. Accordingly, the district court applied the endangerment standard in Minn. Stat. § 518.18(d)(iv). Because the district court found that Christensen did not present a prima facie case of endangerment, the court denied his motion.
The court of appeals reversed, holding that Christensen's motion was not a motion *439 to modify custody and that the proposed modification would not change the child's primary residence based merely on the percentage of parenting time requested. Because we conclude that Christensen's proposed modification is a de facto motion to modify physical custody, and therefore the endangerment standard applies, we reverse.
FACTS
Healey and Christensen are the parents of a minor child who was born in 2010. The parties were never married but Christensen was adjudicated as the biological father. Healey lives in Minnesota and Christensen lives approximately an hour away in Iowa. In 2011, a stipulated order granted joint legal custody to both parties and sole physical custody to Healey, subject to Christensen's parenting time every other Thursday through Sunday. The parties also stipulated to a holiday schedule that alternated parenting time based on odd and even years.
Once the child reached school age in 2015, the parties agreed to amend the parenting time schedule in another stipulated order. The order provided that "during the school year the child shall reside primarily with [Healey] and [Christensen] shall have visitation every other weekend from Friday after school until Sunday evening at 6:00 p.m." During the "summer months," the parties agreed to alternate weeks with the child.
During the 2015-16 school year, the parties again amended the parenting time arrangement, this time informally, and extended Christensen's parenting time on the weekends from Sunday evening to Monday morning when Christensen would bring the child to school.
Shortly thereafter, Christensen brought a motion to increase his parenting time, requesting that the alternating week schedule in the summer be extended to the entire year. Alternatively, Christensen requested something less than equal parenting time. He based his motion on, among other things, allegations that the child was not doing well in school and often arrives without adequate clothing, that the child was wetting the bed and developing a rash, and that the child lacked stability in Healey's home. Christensen stated that, if his request was granted, his wife would continue to drive the child to and from school so that the child would remain in the same school.
The district court denied Christensen's motion, concluding that his motion sought to modify physical custody and that the motion would change the child's primary residence because "[t]he child's time would be split equally between two residences, rather than staying primarily at [Healey's] house." As a result, the district court applied the endangerment standard in Minn. Stat. § 518.18(d)(iv). Because Christensen did not present a prima facie case under the endangerment standard, the district court denied his motion.
Christensen appealed, and the court of appeals reversed. In re Custody of M.J.H. , 899 N.W.2d 573, 581 (Minn. App. 2017). The court of appeals concluded that the district court erred by treating Christensen's motion as a motion to modify physical custody because "an award of equal or nearly equal parenting time would not necessarily be an award of joint physical custody." Id. at 576. The court reasoned that the statutory definition of "joint physical custody" "provides no indication [of] any particular apportionment of parenting time." Id. Moreover, the court held that a determination of whether a modification would change the child's primary residence "means more than simply [considering] the home of the parent who has the majority of the time." Id. at 578. Rather, the court *440 held that the determination is based on a number of non-exhaustive factors, such as "where the child attends school, participates in extracurricular activities, socializes with peers, or worships," and that these factors "will likely vary from family to family" and "may change as th[e] child ages." Id. Because the district court did not consider Christensen's alternative request for something less than equal parenting time, the court of appeals remanded that issue to the district court.[1] Id. at 581.
Healey appealed, and we granted review on the issue of whether the endangerment standard in Minn. Stat. § 518.18(d)(iv) applies to a parent's motion to increase parenting time to 50 percent when prior orders grant sole physical custody and the child's primary residence to the non-moving parent.
ANALYSIS
The issue before us is whether the best-interests-of-the-child standard in Minn. Stat. § 518.175, subd. 5(b), or the endangerment standard in Minn. Stat. § 518.18(d)(iv), applies to Christensen's motion to increase his parenting time to every other week. "Determination of the applicable statutory standard and the interpretation of statutes are questions of law that we review de novo." Goldman v. Greenwood , 748 N.W.2d 279, 282 (Minn. 2008) (citations omitted).
The parties dispute whether Christensen's motion modifies physical custody and whether the modification would change the child's primary residence. At the outset, we note that the terms "parenting time," "physical custody," and a "child's primary residence," are distinct yet overlapping concepts as defined by the Legislature. " 'Parenting time' means the time a parent spends with a child regardless of the custodial designation regarding the child." Minn. Stat. § 518.003, subd. 5 (2016). " 'Physical custody and residence' means the routine daily care and control and the residence of the child." Id. , subd. 3(c) (2016). And " '[j]oint physical custody' means that the routine daily care and control and the residence of the child is structured between the parties." Id. , subd. 3(d) (2016). Although the phrase "a child's primary residence" is used often in Minnesota Statutes, the Legislature has not defined it.
Minnesota Statutes § 518.18(d)(iv) applies the endangerment standard to modifications of "a prior custody order" and requires a court to "retain the custody arrangement ... that was established by the prior order unless" the party seeking the modification makes a prima facie case for modification. Minn. Stat. § 518.18(d)(iv) ; Crowley v. Meyer , 897 N.W.2d 288, 293 (Minn. 2017). To make a prima facie case, the party must allege: "(1) the circumstances of the children or custodian have changed; (2) modification would serve the children's best interests; (3) the children's present environment endangers their physical health, emotional health, or emotional development; and (4) the benefits of the change outweigh its detriments with respect to the children." Crowley , 897 N.W.2d at 293 (citation omitted). If the party establishes a prima facie case, the district court must then hold an evidentiary hearing to consider evidence on each factor. Id. at 293-94.
Minnesota Statutes § 518.175, subd. 5(b), applies the best-interests-of-the-child standard to modifications of "an order granting or denying parenting time, if the modification would not change the child's primary residence." (Emphasis added.) The best-interests-of-the-child standard *441 requires consideration of factors such as "the effect on the child's well-being and development of changes to home, school, and community," and "the benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent." Minn. Stat. § 518.17, subd. 1(a) (2016). The statute is silent, however, as to the standard that applies to modifications of parenting time that would "change the child's primary residence." Minn. Stat. § 518.175, subd. 5(b).
Healey argues that the endangerment standard in Minn. Stat. § 518.18(d)(iv) applies to Christensen's motion because, if the motion were granted, it would modify physical custody and change the child's primary residence. In Healey's view, an equal parenting time schedule would change the parties' sole physical custody arrangement to joint physical custody and would modify the child's primary residence because Healey would no longer have the majority of parenting time during the school year.
Christensen argues that the best-interests-of-the-child standard in Minn. Stat. § 518.175, subd. 5(b), applies to his motion because the modification merely increases parenting time. In Christensen's view, his motion does not modify physical custody or the child's primary residence because the request would not change the child's school, address, or extracurricular activities.
Although the parties dispute whether Christensen's proposed modification would change the child's primary residence, we need only reach that issue if we first determine that Christensen's motion is a modification of parenting time, rather than a modification of physical custody. See Minn. Stat. § 518.175, subd. 5(b) (applying the best-interests-of-the-child standard to modifications of parenting time only "if the modification would not change the child's primary residence"). If Christensen's motion is a modification of physical custody, the endangerment standard in Minn. Stat. § 518.18(d)(iv) applies and we need not go further. We therefore begin with the question of whether Christensen's motion modifies physical custody under Minn. Stat. § 518.18(d)(iv).
Parties are bound by the custody labels that they have chosen, and although it "will require careful drafting by the parties in the first instance," such a rule provides "more certainty in resolving future disputes." Ayers v. Ayers , 508 N.W.2d 515, 520 (Minn. 1993). Before Christensen's motion, the parties agreed that Healey had "sole physical custody" subject to Christensen's parenting time. During the summer, the parties shared equal parenting time, alternating every other week. During the school year, Christensen had parenting time every other weekend, Friday through Monday.
The phrase "sole physical custody," although commonly used in family law, is not defined in Minnesota Statutes. "Physical custody and residence," however, is defined as "the routine daily care and control and residence of the child."[2] Minn. Stat. § 518.003, subd. 3(c). We will therefore consider whether Christensen's proposed modification to extend the alternating week schedule to the entire year would *442 effectively modify Healey's "routine daily care and control" of the child. Id.
We addressed a similar question of whether a motion was a modification of physical custody in Ayers , 508 N.W.2d 515. In Ayers , the parties stipulated to joint physical custody, with the children's primary residence with the mother. Id. at 517. The father had parenting time on "alternating weekends during the school year, most of the summer, every other major holiday, and half of all school vacations." Id. The mother brought a motion to move the children to another state and argued that she was only seeking to adjust the father's parenting time, rather than modify the prior joint custody order. Id. at 520. We rejected that argument, observing that the adjustment that the mother was seeking was "not insubstantial." Id. We reasoned that although the proposed modification would "leav[e] intact the 'joint legal and joint physical' denomination of the arrangement," the modification would give the father "virtually no custody during the school year." Id. Thus, we concluded that the mother's motion was a request to modify physical custody, rather than a request to simply modify parenting time. Id.
Similarly, here, Christensen's proposed modification is substantial. His request would affect half of all school days by increasing his parenting time from every other weekend, Friday through Monday morning, to every other week, Sunday through Sunday. Christensen's proposed modification is even more substantial than the modification in Ayers -it would change Healey's daily care and control of the child from nearly every school day to half of all school days. And the modification would result in the child spending approximately 2 hours each weekday traveling between Christensen's home and the child's school, which would necessarily affect daily routines and scheduling matters. Considering the child's age, school schedule, and the distance between the two parties' homes, we conclude that Christensen's proposed modification is substantial enough to change Healey's "routine daily care and control" of the child. Minn. Stat. § 518.003, subd. 3(c) (defining "physical custody and residence"). Because Christensen's motion modifies the parties' sole physical custody arrangement, the endangerment standard in Minn. Stat. § 518.18(d)(iv) applies to his motion.
Although we conclude that the court of appeals reached the incorrect result, we agree with the court's analysis that "merely increasing Christensen's parenting time to 50 [percent], without more, would not modify the award to Healey of sole physical custody." In re M.J.H. , 899 N.W.2d at 577. Like the court of appeals, we reject the interpretation proffered by Healey and amici that requires a parent with "sole physical custody" to have the majority of the parenting time. In other words, a motion for equal parenting time should not be treated as a motion for joint physical custody entirely on the basis that the sole physical custodian would no longer have the majority of the parenting time.
Our conclusion is supported by the fact that "[j]oint physical custody does not require an absolutely equal division of time." Minn. Stat. § 518.17, subd. 1(b)(8) (2016). As defined by the Legislature, "[j]oint physical custody" means that "the routine daily care and control and the residence of the child is structured between the parties." Minn. Stat. § 518.003, subd. 3(d). Thus, although a joint physical custody arrangement may involve equal parenting time, it is not required . Additionally, the statute that governs modifications of parenting time allows a party to request more than 50 percent parenting time. See Minn. Stat. § 518.175, subd. 5(c) (2016) ("A modification of parenting time which increases *443 a parent's percentage of parenting time to an amount that is between 45.1 and 54.9 percent is not a restriction of the other parent's parenting time." (emphasis added) ). A rule that automatically treats a request for equal parenting time as a request to modify physical custody would conflict with this subdivision. Finally, a bright-line rule based solely on the time spent with the child is arbitrary and easily circumvented. A party could simply request 49 percent parenting time to avoid the court treating its motion as one to modify custody, and thereby avoid the endangerment standard. Practically, a 1 percent difference is only 7 days out of a year. Such a mathematical rule conflicts with the governing principle that a district court has broad discretion in determining custody and parenting time matters. See Goldman , 748 N.W.2d at 282.
In sum, we hold that when determining whether a motion to modify parenting time is a de facto motion to modify physical custody for purposes of deciding whether the endangerment standard applies, a court should consider the totality of the circumstances to determine whether the proposed modification is a substantial change that would modify the parties' custody arrangement. The factors considered may include the apportionment of parenting time, the child's age, the child's school schedule, and the distance between the parties' homes, but these factors are not exhaustive.
The district court here, in finding that Christensen's motion was a modification of physical custody, relied on the apportionment of parenting time. But the district court's findings also included information about the child's age, school, and the distance between the parties' homes. Accordingly, the district court's order contains sufficient findings to conclude that Christensen's motion is a substantial change that would modify the parties' custody arrangement. Because the court of appeals incorrectly held that Christensen's motion was not a motion to modify physical custody and went on to analyze primary residence, we reverse.[3]
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals.
Reversed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

This aspect of the court of appeals' decision is not before us.

Chapter 518A, which governs child support, defines "primary physical custody" to mean "the parent who provides the primary residence for a child and is responsible for the majority of the day-to-day decisions concerning a child." Minn. Stat. § 518A.26, subd. 17 (2016) ; see id. , subd. 1 (2016) (applying the definition to chapter 518). Because this definition is used to determine child support, however, we do not rely on it to determine, as a preliminary matter, whether Christensen's motion modifies physical custody.

We recognize that the court of appeals remanded this case to the district court to consider Christensen's alternative motion for something less than equal parenting time. We express no opinion on the merits of that motion.